Joseph KIM, as assignee of Young S. Kim and Su M. Kim, Plaintiff-Respondent,†

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and Jennifer A. Olcott, Defendants-Appellants.

Court of Appeals

*No. 92-0910. Submitted on briefs July 31, 1992.—Decided August 26, 1992.*

(Also reported in 489 N.W.2d 725.)

† Petition to review granted.

On behalf of the defendant-appellants, the cause was submitted on the briefs of *Richard L. Zaffiro* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Wilbur W. Warren, III* of *Warren Law Office, S.C.* of Kenosha.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.  The issue on appeal is whether one who loses the use of a motor vehicle damaged in an accident but who is financially unable to procure a temporary replacement may nonetheless recover the equivalent value of such loss. The trial court allowed Joseph Kim such recovery against the liability insurer, American Family Mutual Insurance Company. We hold that existing Wisconsin law does not recognize such recovery. We reverse that portion of the judgment awarding such damages.

The facts are undisputed. An insured of American Family damaged Kim's 1983 Oldsmobile Cutlass Calais in an automobile accident. The vehicle was a total loss. The parties tried the case to the trial court without a jury. The court determined that American Family's insured was at fault for the accident and awarded Kim

$5500 as the replacement value for his vehicle. These findings are not at issue on this appeal.

Kim also requested damages for his loss of use of the vehicle. Kim acknowledged that he did not procure or rent a replacement vehicle, but contended that this was because he was financially unable to do so. The trial court agreed that Kim's financial condition precluded him from procuring a replacement vehicle. The court concluded that Kim was entitled to recover for this loss even though Kim had not actually expended any moneys for a replacement vehicle. The court awarded Kim $3750 for this item of loss.[1]

American Family appeals, arguing that Kim's failure to incur actual out-of-pocket expense for a replacement vehicle precludes recovery for loss of use.

## LOSS OF USE DAMAGES

American Family does not dispute the trial court's determination that Kim's financial condition effectively precluded him from procuring a replacement vehicle. Rather, American Family argues that the law does not allow recovery for such a loss unless the claimant actually incurs an expenditure related to such loss.

Both parties cite to *Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.*, 49 Wis. 2d 591, 182 N.W.2d 448 (1971), in support of their competing positions. *Nashban* is the seminal Wisconsin case which recognized the right of a claimant to recover loss of use of a damaged vehicle.

---

[1] This award was computed on the basis of $15 per each day of the loss. Although American Family contested Kim's right to recover for the loss of use of the vehicle, it agreed that if the trial court allowed such recovery, the loss should be computed at this rate.

In *Nashban,* the claimant's tractor-trailer was damaged in a motor vehicle accident. The principal issue at trial was whether the trailer was repairable. Implicitly finding that it was not, the jury awarded damages for the value of the vehicle. However, the jury also awarded the claimant $1818 for loss of use. This amount equaled the actual rental charges paid by the claimant to rent a substitute trailer.

The focus of the supreme court's inquiry in *Nashban* was whether Wisconsin should recognize "loss of use" damages in a case where the vehicle could not be repaired. *Id.* at 597, 182 N.W.2d at 451. After analyzing the law from other jurisdictions, the supreme court adopted the following law: "We conclude that it is correct to follow the modern view allowing recovery for loss of use in addition to total damages, even when the vehicle is not repairable." *Id.* at 601, 182 N.W.2d at 453.

■ The supreme court then went on to set out a two-prong test which must be satisfied from a reasonableness standpoint in order to recover such damages:

> Therefore, damages should be allowed for loss of use (1) during a *time period* [emphasis in original] reasonably required for replacement, including a reasonable time to determine whether the vehicle is in fact repairable, and (2) *in an amount equal to that which was actually expended (absent a showing that a temporary replacement was unavailable),* [emphasis added] provided such amount was not unreasonable.

*Id.* at 601–02, 182 N.W.2d at 454.

In this case, we must construe the meaning and reach of the supreme court's language in *Nashban* under the second prong of the reasonableness test. Specifically, we must determine whether an actual expenditure is

required under all circumstances. Even if we hold that such an expenditure is necessary, we must then further determine whether a claimant's financial inability to make such expenditure constitutes "a showing that a temporary replacement was unavailable." *Id.* at 602, 182 N.W.2d at 454.

The first question—whether an expenditure for loss of use is required in all circumstances—is easily answered. It is not. The supreme court stated that "damages should be allowed for loss of use . . . in an amount equal to that which was actually expended *(absent a showing that a temporary replacement was unavailable),* provided such amount was not unreasonable." *Id.* at 601–02, 182 N.W.2d at 454 (emphasis added). The qualifying language which we have highlighted clearly signals that an actual expenditure is not required in all instances.

We now turn to the closer question of whether Kim's financial condition which precluded him from making such an actual expenditure qualifies as "a showing that a temporary replacement was unavailable." *Id.* at 602, 182 N.W.2d at 454. In its analysis of the cases from other jurisdictions, the *Nashban* court noted that "several courts surprisingly do not require an actual rental, while others have required a showing of unavailability in the absence of an actual rental." *Id.* at 601, 182 N.W.2d at 453. Thus, when adopting the new rule recognizing such damages, the court had the option of choosing language which would have accommodated the very situation present here—no actual rental or expenditure. It did not.

Instead, the supreme court opted for the other scenario which dispenses with the actual expenditure requirement only where a "temporary replacement was

729

unavailable." *Id.* at 602, 182 N.W.2d at 454. This language focuses on the *availability of the replacement vehicle—not the availability of the claimant's financial resources to procure the replacement vehicle.* Here, Kim makes no claim that a replacement vehicle was physically unavailable.

We also note that, in the course of its analysis, the *Nashban* court alluded to the American Law Reports annotation of cases which had previously addressed loss of use recovery. *Id.* at 597 n.1, 601 n.20, 182 N.W.2d at 451, 453; *see also* Annotation, *Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed,* 18 A.L.R.3d 497 (1968). This annotation expressly addresses those cases which had held that financial inability does not preclude recovery for loss of use. 18 A.L.R.3d at 531. Yet, in fashioning the new rule, the supreme court selected language which does not either expressly or inferentially allow for recovery of loss of use damage in such a situation.

We acknowledge that *Nashban* works an uneven application of the right to recover loss of use damages based upon financial circumstances.[2] Regardless, our

---

[2]The trial court also recognized this concern and, at one point in its bench decision, contemplated the possible equal protection implications of the issue. However, the court ultimately did not premise its decision on equal protection grounds. Nor does Kim present the case to us in that context.

We also observe that Kim did not present any argument in the trial court under *Piorkowski v. Liberty Mut. Ins. Co.,* 68 Wis. 2d 455, 228 N.W.2d 695 (1975), which recognizes damages for "inconvenience . . . occasioned directly by the wrongful act . . . of the defendant." *Id.* at 463, 228 N.W.2d at 700. We do not say whether Kim's loss of use damage qualifies under *Piorkowski.* We simply note that the argument was not made.

role is to follow supreme court law—not to change it. *State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985).[3] We reverse that portion of the judgment awarding such damages.

We reverse that portion of the judgment awarding "loss of use damages" to Kim. Costs are awarded to American Family.[4]

*By the Court.*—Judgment and order affirmed in part; reversed in part.

---

[3]Since we reverse the portion of the judgment pertaining to the loss of use damages, we need not address American Family's further claim that Kim failed to mitigate these damages.

[4]The balance of the judgment is not before us and stands affirmed. Since American Family has prevailed on the only issue before us, it is entitled to its costs on appeal even though the judgment is affirmed in part and reversed in part.